IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DOUGLAS ROY SYMMES, JR., )
)
Petitioner, )
)
v. ) 1:22CV235
)
STATE OF NORTH CAROLINA, )
)
Respondent. )

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Douglas Roy Symmes, Jr., a prisoner of the State of North Carolina, has brought a Petition [Doc. #2] and Supplement [Doc. #5] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 16, 2015, Petitioner was convicted by a jury in the Superior Court of Rockingham County, North Carolina, of one count of assault with a deadly weapon with intent to kill inflicting serious injury and one count of attempted murder in cases 14CRS054122 and 15CRS000131. (Petition, §§ 1, 2, 5.) He received consecutive sentences of 83 to 112 months of imprisonment and 180 to 228 months of imprisonment. (Respondent's Brief, [Doc. #14] Exs. 2, 3.) Petitioner pursued a direct appeal but was unsuccessful in that appeal. State v. Symmes, 251 N.C. App. 927, 795 S.E.2d 670 (2017). The North Carolina Court of Appeals set out the facts as follows:

> On 9 February 2015, defendant was indicted for assault with a deadly weapon with intent to kill and inflicting serious injury in violation of N.C. Gen. Stat. § 14-32(a), assault by strangulation in violation of N.C. Gen. Stat. § 14-32.4(b), and attempted murder in violation of N.C. Gen. Stat. § 14-17.
>
> Defendant's trial commenced at the 14 December 2015 criminal session of Rockingham County Superior Court, the Honorable Edwin G. Wilson

1

presiding. The State's evidence tended to show as follows: Defendant and Cynthia Jones ("Jones") started dating in May 2009 and had a child together. As of 11 December 2014, the couple were no longer dating, Jones and defendant had had previous domestic violence issues, and the two had not communicated for approximately three weeks. On 11 December 2014, Jones was driving down the road when she saw defendant in her rearview mirror. Defendant had sent Jones a text message earlier that day that read, "let's talk" and Jones had not responded. Jones pulled into a Bojangles' parking lot, "[b]ecause I worked there at the time and I knew they had cameras if anything did happen. And I knew the people that worked there." Jones parked her vehicle and locked her door. Defendant parked his vehicle directly behind Jones' vehicle and walked up to Jones' vehicle window. Defendant began yelling and beating on Jones' window by punching it with his fists. Jones testified that defendant was "[v]ery irate, mad."

Defendant punched Jones' window about ten times and tried kicking it twice in an attempt to break it. Defendant then ran to his vehicle and retrieved a bat. Using the bat, defendant broke Jones' driver's side window. Defendant unlocked Jones' car door, reached in, grabbed Jones, and "jerked" Jones out of her car. Defendant hit Jones in the head with the bat and Jones fell to the ground. Defendant continued to yell while Jones begged him to stop. Defendant hit Jones with the bat once on her arm and three times on her legs. Defendant stopped hitting Jones once officers arrived.

Several witnesses, mostly Bojangles' employees, observed the attack on Jones and their testimony was consistent with the testimony of Jones. Courtney Dillard ("Dillard") testified that on 11 December 2014, she was in the Bojangles' parking lot when she witnessed defendant block Jones' car, exit his vehicle, walk towards Jones' car, walk back to his vehicle, and retrieve a bat. Dillard testified that defendant opened Jones' door and started hitting Jones, "choking her" as she was trying to crawl away from defendant. Dillard testified that defendant continued to hit Jones with the bat and was screaming "I'm going to F'n kill you."

John McLaughlin ("McLaughlin") testified that on 11 December 2014, he was employed at Bojangles'. He was inside when he was informed that Jones' boyfriend was "beating on her." McLaughlin went outside and saw Jones on the ground. Defendant was standing over her with an aluminum bat in his hand. Defendant was striking Jones and "telling her that he would kill her." McLaughlin approached defendant and defendant stated, "you better back the f*** up." McLaughlin ran back into the Bojangles' store and retrieved an iron rod. When he returned to the scene, the police had already arrived.

2

> Dr. John Cave, a physician employed in the emergency room at Morehead Memorial Hospital, testified that he treated Jones on 11 December 2014. Jones sustained a laceration to her scalp and injuries to her legs, including a broken leg and bruises.
>
> Defendant testified that on 11 December 2014, he sent Jones a text message reading, "let's talk." He saw Jones driving down the road and so he followed her to Bojangles', pulling his car in behind her. Defendant says he exited his vehicle and began "beating on the window. I remember the window breaking. I remember pulling her out. I remember hearing somebody telling me to put down the bat." Defendant then recalled the sound of aluminum hitting the ground and waking up in jail. Defendant testified that he did not have the bat in his possession when he first exited his vehicle. He did not remember retrieving the bat or why he retrieved it, but testified that he kept an aluminum bat in his vehicle for protection. Defendant testified that he could not remember why he assaulted Jones.
>
> On 16 December 2015, a jury found defendant guilty of assault with a deadly weapon with intent to kill and inflicting serious injury and attempted murder. The jury found defendant not guilty of assault by strangulation.
>
> Defendant was sentenced as prior record level II. He was sentenced to 180 to 228 months for attempted murder and a consecutive sentence of 83 to 112 months for assault with a deadly weapon with intent to kill and inflicting serious injury.

Id. On appeal, Petitioner challenged the sufficiency of the evidence, and the North Carolina Court of Appeals found sufficient evidence of premeditation and deliberation to support Petitioner's conviction. Id.

Following the denial of his direct appeal on February 7, 2017, Petitioner later filed a what the trial court treated as a Motion for Appropriate Relief (MAR) on December 28, 2018. (Respondent's Brief, Ex. 8.) That court denied the Motion on January 14, 2019. (Id. Ex. 9.) Petitioner later filed another MAR on August 18, 2020, which the trial court denied the next day. (Id. Ex. 11.) Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals, which that court denied on August 17, 2021. (Id. Ex. 13.) Finally, Petitioner

signed his current Petition and placed it into the prison mailing system on March 19, 2022. Respondent opposes the Petition with a Motion to Dismiss [Doc. #13].

Petitioner's Claims

Petitioner raises four claims in his Petition. First, he alleges a variety of conspiracies in the state courts, and he claims that no matter what he tried to do he was not allowed and that "[n]o matter what [he] proved before a Judge in Court, [he] was still found guilty & punished ANYWAYS" when "[a]ll went with PAST/PSEUDO Truths instead of the FACTS, TRUTH, & EVIDENCE." (Petition, § 12, Ground One.) In the second claim, he states that "[t]he resigning of a Disgraced DA Craig Blitzer & the Facts & Evidence found out about Mr. Blitzers many Illegal, Unethical & VIOLATIONS of Oath of Office & Illegal Conduct." (Id., Ground Two.) He then points to a newspaper article from March 3, 2018, noting that 16 of DA Blitzer's cases were under review after Blitzer pled guilty to a misdemeanor charge in an unrelated scheme to evade state restrictions on hiring spouses. Blitzer worked on Petitioner's case at the time of his conviction in 2015, but Petitioner does not point to any specific misconduct by Blitzer in his case, and the article indicates only that Petitioner's case was one of several being reviewed to make sure it was not mishandled in any way. Petitioner's third claim challenges the denial of his second MAR on the basis that it occurred too quickly and possibly that it occurred without discovery that Petitioner sought. (Id., Ground Three.) Finally, Petitioner's fourth claim for relief also relates to his second MAR, contending that the Clerk of the North Carolina Court of Appeals signed the certification of the court's order denying Petitioner's petition for certiorari but did not have authority to do so and was part of the conspiracy against him. (Id., Ground Four.)

4

Discussion

As stated above, Respondent filed a Motion to Dismiss. In that Motion, Respondent first raises an argument that some of Petitioner's claims were filed outside of the one-year limitation period, 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

Turning first to subparagraph (A), a Petitioner's one-year limitation period ordinarily commences under that provision on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court must examine when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended. Here, the North Carolina Court of Appeals denied Petitioner's direct appeal on February 7, 2017. Petitioner did not appeal

5

further, which means that his conviction became final 35 days later, on March 14, 2017. Gonzalez v. Thaler, 565 U.S. 134, 154 (2012); N.C. R. App. 32(b), 14(a) and 15(b). Petitioner's time to file in this Court under subparagraph (A) began to run on that date and expired a year later in March of 2018. Petitioner did later pursue collateral relief in the state courts through his MARs, and it is true that properly filed attempts at collateral relief in the state courts toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). However, Petitioner filed his first MAR in December of 2018, well after the deadline to file in this Court under subparagraph (A) already passed. State filings made after the federal limitations period expires do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Petitioner's claims are out of time under subparagraph (A) and are time-barred unless they are timely under another provision.

Petitioner does not make any arguments that subparagraphs (B) or (C) apply beyond unsupported and conclusory allegations in his Response regarding a large conspiracy against him by state officials. This could be read as an argument under subparagraph (B). However, to the extent an alleged conspiracy led to his convictions, he could have brought that claim at any time prior to the expiration of the statute of limitations. The argument does not render his claims timely.

As for subparagraph (D), the facts underlying Petitioner's first claim for relief would all have been known to him at the time of his conviction. Therefore, this subparagraph could not render his first claim timely. Petitioner's second claim regarding possible misconduct by

6

DA Blitzer during his case relies on an article written in March of 2018, which is less than a year before he filed his first MAR in December of 2018. Petitioner attaches that article to his Response. The article specifically states that Blitzer resigned because of misconduct in March of 2017 which means that his general misconduct was knowable by Petitioner well more than a year before his first attempt at collateral relief and that the statute of limitations for Petitioner's second claim for relief is not affected. Moreover, he knew at the time of his conviction how Blitzer handled his particular case. Subparagraph D does not render Petitioner's first two claims timely.[1] Because Petitioner failed to make a timely filing as to his first and second claims for relief, those claims are time-barred under the applicable statute of limitations.

Subparagraph (D) could also apply to Petitioner's third and fourth claims alleging that the state trial court did not properly consider his second MAR and that the denial of his petition for certiorari seeking review of that denial was not properly signed. Obviously, the factual predicate for those claims did not exist prior to the denials Petitioner seeks to contest. However, these claims fail for a different reason. The second MAR and petition for certiorari were attempts at collateral relief in the state courts. Claims challenging decisions made by state courts on collateral review cannot be raised in federal habeas actions. Lawrence v.

---

[1] Notably, even if the Court used the March 3, 2018 article as the trigger for the one year limitations period as Petitioner contends, and even if the court excludes the period of time during which his state MAR was pending, this claim is still untimely. From March 4, 2018 until the filing of the MAR on December 28, 2018, 299 days passed. The MAR was denied on January 14, 2019, and he filed his second MAR on August 18, 2020, over a year later. Thus, at that point, an un-tolled period of over two years had elapsed from the March 3, 2018 article that Petitioner cites as the basis for Claim 2. In addition, another 214 days elapsed after the denial of his petition for writ of certiorari with the North Carolina Court of Appeals on August 17, 2021, until the filing of the current Petition on March 19, 2022. Thus, even accepting Petitioner's contention that he could not have known the basis for this claim until March 3, 2018, and even tolling all of the time periods in which a state post-conviction proceeding was even arguably pending, Petitioner is still out of time under subparagraph (D).

Branker, 517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself."). Therefore, Petitioner's third and fourth claims for relief are not cognizable in this action and should be dismissed for that reason.

Petitioner appears to argue at times that he is innocent of the charges for which he was convicted. The United States Supreme Court has recognized that a showing of actual innocence may excuse noncompliance with the one-year limitations period. McQuiggin v. Perkins, 569 U.S. 383, 386-87 (2013). However, the Court also recognized that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. Id. Petitioner does not present the "rare" case required by McQuiggin. To demonstrate actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995); see McQuiggin v. Perkins, 569 U.S. at 399. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Petitioner points to no new evidence establishing his innocence. Instead, he simply continues to argue that he is

8

Case 1:22-cv-00235-WO-JEP   Document 20   Filed 08/16/23   Page 8 of 10

innocent based on the evidence submitted at his trial or that existed at that time. This is not a claim of "actual innocence" as defined by McQuiggen and Schlup.[2]

Finally, the Court also notes that the Supreme Court has determined that the one-year limitation period is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 649 (2010). However, a petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. (internal quotation omitted). Petitioner here has not shown any extraordinary circumstances. In addition, in order to demonstrate diligence, the prisoner must show diligence throughout the entire post-conviction process; waiting years to raise claims shows a lack of due diligence. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Petitioner sets out no facts that would support equitable tolling or a finding of diligence on

---

[2] Petitioner's contentions in the Petition are vague and conclusory, but it appears that many of his contentions relate to events over the course of the 2-year period prior to the assault. Petitioner contends that he should have been allowed to "prove ALL the conspiratorial conduct that had been going on starting on July 7th, 2012 – the day after my sons birth & him failing a drug test after birth – up to Dec. 11th, 2014 that helped bring about the mental breakdown that happened on Dec. 11th, 2014." (Petition at 32.) In his state MAR, Petitioner complained that evidence regarding this time period was "withheld" because it was not allowed to be presented to the jury. In his Response brief and his supplemental filings in this case, Petitioner likewise argues at length regarding the allegedly false prior charges of domestic violence, the child custody disputes, and the related alleged malfeasance by Ms. Jones prior to the assault on December 11, 2014. However, it is not clear how these contentions would support a claim of actual innocence, and none of his arguments show that it is more likely than not that no reasonable juror would have found Petitioner guilty. Indeed, the contentions reflect the history of escalating conflict between Petitioner and Ms. Jones, as well as Petitioner's belief that he was being wronged by Ms. Jones, leading up to the events of December 11, 2014. In his state MAR, Petitioner also argued that he should have been allowed to plead guilty to – and been sentenced for – simple assault or assault with a deadly weapon, rather than assault with a deadly weapon with intent to kill inflicting serious injury, because he did not intend to murder Ms. Jones and because her injuries were only a fractured bone and were not serious. In his Response brief, Petitioner similarly states that there was not probable cause to indict him because, while he concedes he hit Ms. Jones' with a bat, he argues that Ms. Jones' injuries were "below the knee" and were "not life threatening." However, it is not clear how that would affect his indictment or conviction under N.C. Gen. Stat. § 14-32(a). See, e.g., State v. Hannah, 149 N.C. App. 713, 563 S.E.2d 1 (2002) (noting that a "serious injury" under N.C. Gen. Stat. § 14-32(a) is distinct from a "serious bodily injury" under N.C. Gen. Stat. § 14-32.4.). In any event, Petitioner does not point to any new evidence that would actually undermine his convictions, and none of his contentions would form a basis for a claim of actual innocence to overcome the statute of limitations bar.

9

his part. As noted above, Petitioner knew or could have known of the facts related to his trial at the time of his conviction. Thus, Petitioner is not entitled to equitable tolling as to his cognizable claims, those claims were filed out of time, and they should be dismissed.

IT IS THEREFORE RECOMMENDED that Respondent's Motion to Dismiss [Doc. #13] be granted, that the Petition [Doc. #2] be denied, that this action be dismissed, and that, there being no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability not issue.

This, the 16th day of August, 2023.

                                                  /s/ Joi Elizabeth Peake
                                                  United States Magistrate Judge